which is Lieder v. City of New York. Thank you. Good morning. Attorney Steiner? Yes, good morning, Your Honor. You have reserved three minutes for rebuttal. Yes. Should I proceed? Please, yes. Okay. May it please the Court. This action stems from a trip and fall on a Kings County, Brooklyn, New York sidewalk at 672 Eastern Parkway. Subsequent and timely to the trip and fall, plaintiff appellant filed a notice of claim pursuant to 58. Shortly after that the matter was filed in court and pre-discovery a summary judgment motion was drafted by City Appellate. The basis of the summary judgment motion was that there was no prior written notice pursuant to the Administrative Code 7201. Is that an affirmative defense on the part of the City? I believe it would be an affirmative. That might have to do with the burden of proof. As well. Yes. In any event, the plaintiff appellee responded with Big Apple maps showing a defect at 672 as well as an affidavit from Big Apple engineer, a surveyor, attesting to the fact that he reviewed the map, did indeed find indication on that map that there is notice to the city of a defect and the marking exists on the map as well. When the lower court reviewed the motions, the lower court did indeed determine that there is a defect, that there's dispute of fact but material issue of fact as to whether or not there is notice of the defect but went further and gave a decision that there is no notice to the city within the notice of claim that the incident occurred at 674 Easton Parkway but and therefore granted the summary judgment motion of the city which is the error. We are claiming the incident occurred at 672 Easton Parkway. The lower court went beyond the notice of claim and got into a material issue of fact as to which side of 672 Easton Parkway the incident occurred at. It subdivided the court 672, relying I believe on the city's motion, into three different parts. The part closer to 674, the part in the middle of 672 and the part closer to 670. Counsel, just by way of clarification, you're now saying that the claim is that Mr. Leder's fall was caused in front of 672, correct? We've said that throughout. Throughout? From the notice of claim until now. There's never been any change in that. But I read your briefs to be arguing or suggesting that the bump, the lift in the sidewalk was at 674 Easton Parkway and that that may have caused this fall. But that's what you briefed or did I misread the briefs? I don't know. I don't want to give an opinion on the reading but my opinion is that the Your Honor might be looking at the affidavit from and there might be notice in the brief regarding the affidavit from the engineer and that says that the defect begins on 674 and it does. There is a defect and a change in elevation at 674. That sidewalk flag continues to 672. Well, I understand that that's the argument. You're saying that the defect that the marking that appears on the city map should be interpreted to extend to the entire block well from at least 674 to 670. That's in essence your argument, right? That's not for the purpose of this motion because the lower court has already determined that there is a material of issue effect as to whether or not the prior written notice is at 672. The lower court did not grant summary judgment because the lack of notice at 672. There's an affidavit from Big Apple Map saying that there is notice of 672. I thought the court granted summary judgment because it found that there was no material issue of fact as to whether the city had prior notice. Because prior notice of a defect at 674 and that's the error. They did say there's prior notice at 672 which is the confusing part. But you're not claiming he fell at 674. You're claiming he fell at 672 on the way to 670 where his daughter lived, correct? I'm claiming he, Judge Kears, that the incident occurred at 672. That's in the notice of claim and that's where the defect is shown on the Big Apple Maps and there is mention of 674 which might have confused the issue. But merely to show that the defect starts at 674 where the flag is elevated and if it's elevated on one side the flag because of the seesaw effect is disrupted on the other side as well. But there's no, there's never a claim that this incident occurred at 674. There is some testimony about that at the 50H at the date of the incident whether or not the plaintiff was aware exactly where it occurred. He went out the next day and saw that the defect but based on what he told us and based on the notice of claim it's clear it's at 672. What's the date of the Big Apple Map? It's old. I don't remember the exact date but I think it was like 2002. Yeah, about 22 years ago or so. Almost 20 years before the fall. So why should anyone assume that the pattern of defects would remain the same for 20 years? I mean as a New Yorker I assume it all gets worse over time but some of them for 20 years something may get corrected. The defect is still there but regardless the notice occurred and the city was aware of it. But you're saying the defect is still there because you're saying the defect it's the same defect that's in the Apple Map but if the map was compiled like 20 years earlier I don't see how you can... There may be a defect there but I'm not sure how you can argue that it's proven by the fact that there was a defect picked up by a map 20 years earlier. The notice is not told by the gap in time. The notice was created when the map was filed and the city did nothing about it. The notice occurred. There's no statute of limitations on the notice. They do have notice. Well if you had noticed that in 1942 there was a crack in the sidewalk and somebody fell at the same place that doesn't mean that it's the that they fell into the same pothole or the same defect or irregularity that existed in 1942. I understand that might indeed be true but I believe that's an argument beyond the notice of claim issue which is what we're here today for. That might be an argument for trial but the only issue for this is whether or not there was notice whether or not it's the same defect or whether or not that's indeed exactly where the fall occurred is more of an issue for trial. But the problem is that the notice the dash is in front of 674 not in front of 672 right and the city at least they submitted declarations that they conducted searches for notice at 672 which is where your client claimed to have fallen. There's no such notice. That's a dispute of fact whether or not that line on the is 674 or 672 and that there's an issue of fact created by the affidavit of the engineer and the lower court found that indeed there is a material issue of fact as to whether or not there's notice regarding 672. Lower courts already addressed that that their lower court did not grant summary judgment because they think there's no notice for 672. The lower court granted summary judgment because they believe that I should that I'm saying it happened at 674 but I'm not saying that. What was the purpose of submitting the third photograph which has the orange line but doesn't seem to be in the same place at all because there's a there's a light pole there that's not in the other. Photographs were submitted and there's multiple locations there's multiple addresses shown on the photographs but pursuant to Brown 95 New York 395 391 I'm sorry the photographs do not change the address that's given in the notice of claim. The notice of and the Brown is very specific on that and Brown they have a photograph shown that was different from the address stated on the notice of claim. There's some measurements similar to this case almost exactly analogous to this case. But why was the third photograph submitted? I understand your argument that it doesn't matter but you're the one who submitted it or is this a photograph prepared by the city of New York? I believe the photograph was I'm not sure I believe it was prepared by. It's the one that has the orange. The orange I think that's all photographs I think that's Mike's photograph but it's I think that was regardless of what the photograph is there for what it isn't there for your honor the entire appeals. Your argument is what matters is in the in the proof of claim. The appeal is based on the fact that the lower court opinion says we didn't claim 674 and that's where we say the defect is that's not the case. We say the defect is 672 and that is where the defect is and that's all clear. It's confusing when you subdivide 672 into three different areas but we didn't say that on notice of claim we use the address 672. Anything else? Thank you counsel you have reserved three minutes for rebuttal. Thank you. Good morning your honor of police the court my name is Elizabeth Friedman and I'm appearing for the defendants appellees the city defendants appellees in this case. Your honor the district court this court should affirm the district court's order judgment granting summary judgment. The district court correctly applied settled New York law to the undisputed facts here. The district court correctly found no factual issues. The plaintiff here alleged he fell and was injured in front of 672 Eastern Parkway on a sidewalk defect between 670 and 672 Eastern Parkway as depicted in the photographs that are next to his notice of claim and also as set forth very clearly in his testimony at the general municipal law section 58 hearing. The city defendants conclusively established there was no prior written notice of any defect at that location. The Big Apple map upon which the plaintiff relies shows only a potential defect at a different location and beyond depicting that defect at a different location between 672 and 674 Eastern Parkway the marking showed a portion of a raised sidewalk running parallel to the street not a raised sidewalk flag perpendicular to the street which is the particular defect the plaintiff is alleging he fell on. And under New York law court of appeals New York state court of appeals law when a Big Apple map is relied on to satisfy prior written notice the type and location of the defect must be precisely noted on the map because the city defendants did not acquire written notice of the alleged condition defective condition the complaint was dismissed properly dismissed as a matter of law. Is the map ever is there a mechanism for updating the map? Your honor the Big Apple maps were submitted this one was submitted filed with the city in November I believe of 2003 and that was the latest Big Apple map that was provided the city doesn't create these maps they're created by a corporation and I don't think that they filed any map subsequent to that date and that is the latest but in any event none of the records provided up provided the city did provide numerous records they did a search of the area they provided all the records there to the plaintiff they're in the record and there was no prior written notice and in addition your honor I'd like to just point out that the case upon which the plaintiff is relying the Brown versus city of New York that has nothing to do with prior written notice here that has to do with the sufficiency of a notice of claim in that case the court found that the city was on notice of the location of the accident as being part of the sidewalk in that case here by contrast the notice of claim identified the address of the defect and the Big Apple map showed a different defect so it is not a different defect and at a different location so it's not apposite it's not it doesn't control here we're talking about prior written notice that case involved sufficiency of the notice of claim and it just isn't applicable I'd like to also point out that the photographs that are next to Mr. Genovese's affidavit the third photograph shows according to the google maps it shows that the defect which is painted orange was squarely in front of 674 eastern parkway the map says that there's a defect between 672 and 674 eastern parkway the plaintiff never testified that he fell a few doors down from 670 eastern parkway counsel when it's a different defect your honor I understand that that's the the city's claim when I looked at the map there there are lines to show a defect that are perpendicular as opposed to horizontal but when it came to 674 the line was horizontal hence their experts said that is meant to indicate sort of a continuous defect what's your response to that argument your honor the response to that is that the map as it shows in the record is clearly the line that horizontal line is clearly in front of between 672 and 674 and Mr. Genovese did state that it showed that the defect the map may have extended that however if you look at the key to the map it's on page three appendix page 336 the key to the map provides symbols and there is a different symbol for an extended section of uneven sidewalk it's not the top says a vertical line or a horizontal line is a raised or uneven portion of sidewalk for an extended section of raised or uneven sidewalk there is a line with two bars on either side there is nothing like that marking on this map so on its face the map does not provide the prior written notice that Mr. Genovese is claiming that it extends somehow extends to the other property to 670 uh eastern parkway that's or 672 eastern parkway between the defect between 670 and 672 it does not provide it does not extend am i misreading the map if it would appear that there are defects in in every virtually every bit and piece of pavement different on these two blocks different types of defects are denoted in in along here however there's nothing in between 670 and 672 eastern parkway which is the defect upon which plaintiff is alleging he fell and that is borne out by not only his testimony at the hearing but also the photographs and that's to the notice of claim he cannot come back later and somehow change the location of the defect upon which he fell he cannot change his claim at this time that's what the search was done there is no prior written notice of the defect that he alleges caused his fall and the court of appeals and D'Onofrio and Leary and Vega all said it in our brief clearly said that this issue is a matter of law that must be decided and if there is no prior written notice even if there is a defect nearby if there's not then there's prior written notice of a nearby defect it does not provide notice of the particular defect upon which the plaintiff and that's based on the case where someone claims they fell on a cracked or raised sidewalk and then the notice of the defect was a pothole right next to that spot and that was not deemed to be sufficient it was because of the description of the that's one reason why it wasn't sufficient the description was not the defect or it wasn't at the precise location there are cases that we said in our brief where if it's not at the precise location then it does not provide prior written notice those cases I'd like to point out Belmonte is one of those cases that we that we cite in our brief and Belmonte did state that the address was wrong in the prior written notice the symbol which denoted an extended section of raised or uneven sidewalk which ran parallel to the curb was insufficient to constitute prior written notice because the defect and issue was perpendicular to the curb that is exactly what we have here we have a different defect marked on the map at a different location it does not provide prior written notice of the particular defect the plaintiff repeatedly alleges he fell on for that reason the district court correctly found no factual issue and correctly granted summary judgment dismissing the complaint does the city ordinarily have a claim over against the landowner well your honor I think that depends on the particular situation in this case I believe the landowners the property owners were dismissed out of the case earlier so it depends on the particular case thank you and were they dismissed because it was a household with only a certain number of residents that the law says that there's an exemption that if it's less than I forget the exact number is that why they were dismissed I believe that is the case it was marked in the docket sheet I don't believe there was an order they granted summary their motion for summary judgment was granted they basically the court said yes the plaintiff has no standing to raise an equal protection claim on behalf of the four residential property owners even if she did for family residential property owners are not a protected class the New York City Council could rationally conclude that at a certain point a property owner is more likely to have resources necessary to protect itself against liability there is no impediment to the city council drawing that line between three family or less residential property owners and four family or more residential property owners so yes that is they were dismissed out because of the exemption in the statute the court has no further questions we rest on our brief thank you your honor seeing none thank you the decision in which the landlord was let out of the case puts liability 100 percent on the city for the sidewalk for the reasons you were stating the premises is owner occupied non-commercial and has less than three apartments within it therefore it's the responsibility of the city pursuant to New York sidewalk law appellee mentioned throughout her argument that I did not allege anywhere that the incident occurred between 670 and 672 those are the addresses that will continuously use an argument and in the papers and that's 100 percent right because I don't allege it occurred at 670 I allege it occurred at 672 670 is not in my notice of claim 674 is not in my notice didn't your client testify that it happened somewhere between 672 and 670 because his daughter lived at 670 and he was walking towards his daughter's home his testimony was cloudy about that but that is part of the testimony and it might become something that he could be cross-examined on at trial but for purposes of notice of claim I wrote time place and manner in which the claim arose is that on or about February 18th at approximately 7 p.m. claimant sustained severe and permanent injuries when he's forced to slip etc and they go on to say and or broken sidewalk leg on the sidewalk in front of 672 Eastern Parkway and the Big Apple maps show a line where it shows a map a line and the expert who works for Big Apple did surveying explaining that the lines aren't exactly where it is and based on his knowledge of the way these lines are placed on the maps by the survey is it's more likely than not that this indicates a defect at 672 Eastern Parkway which is what our notice of claim says and the rest is is almost a shell games at this part of 672 that part of 672 it goes beyond what's required so you can see that there's no factual basis to argue a defect at 674 then because I thought you were part of your argument was the defect extended to no what's your question your honor I'm sorry I misheard I you started your argument uh saying you were not claiming he fell at 674 or that 670 that's that if I if I may finish that the uh defect was at 674 you're you're abandoning that part of the argument no your honor what I the only address I use was 670 that appellee kept saying between 670 and 672 when she argued to go she was using 670 in the papers they use 674 there is a defect at 674 but I don't think it matters because there's a defect at 672 that's what I claimed that's what's shown on the map and that's what the engineer says in his affidavit appears on the map a defect at 672 and and the rest is just confusing the issue what part of 672 and where well thank you thank you counsel to both sides we will reserve a decision on the matter the next case uh on the docket is uh u.s versus herman blanco zatolla and ross and I should note that uh mr blanco's appeal is on submission so that leaves uh mr zatolla and mr ross is appealed for oral argument and um uh good morning your honors may I proceed you may proceed uh counsel are you uh mr green attorney green theodore green for anthony's atola you have reserved one minute for rebuttal that's correct your honor uh anthony's atola's uh defense was that he was not involved in a murder for hire scheme and that the crimes were committed by others to advance this defense he sought to introduce evidence of a dispute that his father had over his illegal mafia sponsored gambling enterprise a dispute which escalated over a period of months that coincided with the escalating series of attacks on the father sylvester and his son salvatore both of whom were involved in the gambling enterprise uh mr zatolla could not effectively present this defense because of a evidentiary ruling which was erroneous and overly restrictive that had to do with uh mr zatolla wanting to introduce a statement against penal interest that his father made in a to the fbi when the fbi was trying to figure out who had committed these assaults on sylvester and later his son now the what the jury heard was there were two such proffers one july 12 2018 and the other july 16th the jury heard only the july 12th statement buttressed by testimony from salvatore so uh counsel because of your uh the time limit why don't we cut to the chase and as i understand you're uh at one of the several evidentiary questions is the july 16th statement uh proffer statement uh by mr sylvester um my question is when you compare the july 12th and july 16th statements he gave to the fbi um they there was a lot of overlap and the court noted that that they were very similar the only distinction seemed to be that the july 16th statement uh contained additional information that mr sylvester had stopped making protection payments to his mafia protector richard deluca due to deluca's inability to protect his interests but the fact that he was operating an illicit gambling business that he had a conflict with the albanian organized crime figures all of those statements were in the july 12th that were admitted so i'm trying to understand how the july 16th was not redundant and how other than that one statement which really is is just a little bit more specific detail precluded your client from arguing to the jury that it was not your client who committed or paid someone to commit the uh this murder and assault but rather um the albanian or uh other organized crime sure sure you're here's why the july 16th statement was materially different the what the jury heard which is based on the july 12th statement and also some testimony from the son is that the the albanians had muscled out uh sylvester from one of his spots and uh sylvester was then ordered by high-ranking member vincent daciano who was giving orders from from prison to uh back off and let the albanians take over the spot so the july 12th statement that came in goes on to say that uh sylvester contemplated suing the landlord to get back his property and then dropped it so the narrative that the jury heard was that this dispute with the albanian organized crime uh group rose up in the summer of 20